**WO**

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                          DISTRICT OF ARIZONA

8
   Jorge Morales-Alfonso,                    )
9                                            )        CV 15-0200-TUC-JAS (LAB)
                    Plaintiff,               )
10  v.                                       )
                                             )        **REPORT AND**
11  Francisco Enterprises, Inc., et al.,     )        **RECOMMENDATION**
                                             )
12                  Defendants.              )
   _____   )
13

14          Pending before the court is the defendants' motion to dismiss the plaintiff's fifth

15  amended complaint pursuant to Fed.R.Civ.P 12(b)(1) and 12(b)(6), filed on March 28, 2017.

16  (Doc. 55)

17          The plaintiff in this action, Jorge Morales-Alfonso, claims his civil rights were violated

18  when he was evicted from the Tohono O'odham Swap Meet.  (Doc. 54)

19          In the pending motion, the defendants argue that this court lacks subject matter

20  jurisdiction over the plaintiff's various claims and, in the alternate, that the plaintiff has failed

21  to state a claim upon which relief can be granted.  (Doc. 55)

22          The case has been referred to Magistrate Judge Bowman for all pretrial matters pursuant

23  to the local Rules of Practice.  LRCiv 72.2.

24          The Magistrate Judge recommends that the motion be granted in part.

25

26          <u>Background</u>

27          In his fifth amended complaint, Morales-Alfonso describes difficulties he had conducting

28  business at the Tohono O'odham Swap Meet.  (Doc. 54)  He alleges he was treated poorly due

to "racial/ethnic troubles with the staff." *Id*., p. 4. He alleges this ill treatment culminated on June 22, 2014, when Swap Meet personnel evicted him with the help of a tribal police officer, who was apparently the defendant Julian Garcia. *Id*., p. 6. Morales-Alfonso objected to his ejection, but he was told by the officer, "In Indian Territory you have no rights." *Id*. In February of 2015, Morales-Alfonso and his wife went to Sells three or four times in order to get a copy of the police report. He alleges that on each occasion, the Chief of Police, the defendant Vincent E. Garcia, sat close by "and paid real attention to Plaintiff." *Id*., p. 6.

Morales-Alfonso claims that the defendants are liable under (1) 42 U.S.C. § 1983 for violating his federal constitutional rights, (2) 18 U.S.C. § 241 and § 242 for violating his civil rights, (3) 42 U.S.C. §§ 1981, 1982, 1985, and 1986 for civil rights violations, and (4) 25 U.S.C. § 1302 for violating his rights under the Indian Civil Rights Act (ICRA). (Doc. 54, pp. 2-3) Morales-Alfonso also claims he is entitled to a declaratory judgment that the defendants violated his rights under the Tohono O'odham Nation's Constitution, Article I, section 2; Article VI, section 1 and subsection (c)(6); and Article XXV. *Id*., p. 4 He also claims the defendant Julian Garcia is liable for negligent breach of the duty of care owed "due to his public position as an authority" and Vincent E. Garcia was deliberately negligent "for not correcting known deficiencies in procedures within his department." *Id*.

In the pending motion, the defendants argue that each of these claims must be dismissed either pursuant to Rule 12(b)(1) for failing to allege subject matter jurisdiction or under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. (Doc. 55)

Morales-Alfonso filed a response to the motion on April 10, 2017. (Doc. 56) As a preliminary matter he argues that the motion was filed after the deadline for filing a responsive pleading to his fifth amended complaint. While that might be true, it does not preclude this court from considering the defendants' arguments. A motion challenging the court's subject matter jurisdiction may be brought at any time, even after judgment is entered. *Arbaugh v. Y&H Corp*., 546 U.S. 500, 506, 126 S. Ct. 1235, 1240 (2006). Such a motion cannot be untimely. And while a motion pursuant to Rule 12(b)(6) should be brought in a timely manner in

accordance with the Rules of Civil Procedure, this court is independently required to dismiss any action that fails to state a claim on which relief may be granted regardless of the diligence displayed by the parties. 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* (Doc. 8) (granting the plaintiff's motion to appear in forma pauperis).

Discussion

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction to entertain a claim. Fed.R.Civ.P. When analyzing a facial challenge to the court's jurisdiction, the court accepts as true the factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Because federal courts are courts of limited jurisdiction, the party invoking the jurisdiction of the court has the burden of proof. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).

"A Rule 12(b)(6) motion tests the legal sufficiency of the claim." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). The claim must allege a legally cognizable theory of relief and include factual allegations sufficient to support that theory. *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

"All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 -755 (9th Cir. 1994). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id*.

To survive the motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (internal punctuation omitted). "[A] well-pleaded complaint may

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556, 1965 (internal punctuation omitted).

First, Morales-Alfonso claims that the defendants are liable under 42 U.S.C. § 1983 for violating his constitutional rights. (Doc. 54, p. 2) As the defendants accurately note, however, section 1983 only applies against defendants acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. It does not apply to a defendant acting under color of *tribal* law. *R.J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 (9th Cir. 1983). This claim should be dismissed.

Morales-Alfonso argues that the term "Territory" could refer to Indian country. He is incorrect. The term "Territory" refers to territories of the United States such as the "Northern Marian[a] Islands, Guam, and the Virgin Islands." *Cleveland v. United States*, 1995 WL 710780, at *4 (D. Mont. 1995).

Morales-Alfonso further claims that the defendants are liable pursuant to 18 U.S.C. § 241 and § 242 for violating his civil rights. (Doc. 54, p. 2) The defendants correctly note that because these are criminal statutes, they create no civil liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). These claims should be dismissed.

Morales-Alfonso also claims that the civil rights statutes 42 U.S.C. §§ 1981, 1982, 1985, and 1986 are actionable against the defendants through the operation of section 1983. As the court noted above, however, section 1983 does not apply to these defendants because they did not act under color of state law. Nevertheless, because these civil rights statutes are actionable without resorting to section 1983, the court should not dismiss these claims. *See, e.g., Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989) (raising a section 1981 claim against tribal actors).

The defendants argue these claims should be dismissed because Morales-Alfonso failed to allege "invidiously discriminatory class-based animus." (Doc. 60, p. 3) The court does not agree. Morales-Alfonso alleges his difficulties with the Swap Meet personnel were the result of "racial/ethnic troubles." (Doc. 54, p. 4) He alleges this ill treatment culminated on June 22,

- 4 -

2014, when Swap Meet personnel unjustly evicted him with the help of the defendant Julian Garcia. *Id.*, p. 6. When Morales-Alfonso objected to his ejection, he was told by the officer, "In Indian Territory you have no rights." *Id.*

Morales-Alfonso alleges overt acts of discrimination coupled with evidence of racial animus. He has pleaded sufficient facts to survive a 12(b)(6) motion to dismiss. *See, e.g.*, *Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989)  (Plaintiff provided evidence of racial animus in support of section 1981 claim by alleging that tribal actor stated, "whites have no rights on the reservation").

The defendants further argue that section 1981 does not apply here because that statute guarantees the right "to make and enforce contracts" but the defendants were not a party to the alleged contract. (Doc. 60, p. 4)  That contract was between the plaintiff and the swap meet, not between the plaintiff and the tribal defendants. The defendants support their argument by citing to *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480, 126 S. Ct. 1246, 1252 (2006). The court does not agree with the defendants' reading of that case.

In *McDonald*, the plaintiff, who was the sole shareholder and president of JWM Investments, Inc., sued Domino's Pizza alleging that the defendant breached contracts it made with JWM Investments due to racial animus. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 472, 126 S. Ct. 1246, 1247 (2006). The Supreme Court held that the plaintiff could not bring an action pursuant to 42 U.S.C. § 1981 because he had no rights under the contract at issue. *Id.* at 479-80, 1252. *McDonald*, therefore, stands for the proposition that a plaintiff who brings a section 1981 claim must be a party to the contract he wishes to "make and enforce." *Id.* It does *not* hold that the *defendant* must also be a party to that contract. *See Youngblood v. George C. Wallace State Cmty. Coll.*, 2014 WL 2961085, at *18 (M.D. Ala. 2014) ("[T]his court concludes that [the defendant] has read *Domino's Pizza* too broadly: that case requires that the plaintiff be a party to a contract . . . , but applies no similar requirement with regard to the defendant."). It is enough that the plaintiff alleges that the defendant acted in a way that interfered with the plaintiff's right to make and enforce his contract. And the plaintiff has done

so here.  *See Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992) (abrogated on other grounds by *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc)) ("[C]ourts have not imposed a privity of contract type requirement that would otherwise protect third parties from section 1981 liability.").

Morales-Alfonso also raises a claim pursuant to the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302, which prohibits Indian tribes from violating certain individual civil rights.  The ICRA, however, does not authorize bringing suit in *federal* court.  On the contrary, "*Tribal* courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65, 98 S. Ct. 1670, 1680 (1978)  (emphasis added).  If Morales-Alfonso has a proper ICRA claim, he must bring it in tribal court.  This claim should be dismissed.

Morales-Alfonso further claims the defendants violated his rights under the Tohono O'odham Nation's Constitution, Article I, section 2; Article VI, section 1 and subsection (c)(6); and Article XXV.  *Id.*, p. 4  Article I, section 2 extends the authority and jurisdiction of the Tohono O'odham Nation to all persons and activities within the boundaries of the Nation. (Doc. 55-1, p. 23)  Article VI, section 1 vests legislative powers on the Tohono O'odham Council.  *Id.*, p. 25.  Article VI, subsection (c)(6) specifically gives the council authority "to provide for the maintenance of law and order and the administration of justice. . . ."  *Id.*, p. 26  In Article XXV, the Deputy Assistant Secretary of Indian Affairs approved the Tohono O'odham Nation Constitution.  *Id.*, p. 40.

It is unclear why Morales-Alfonso believes the defendants violated his rights under the Tohono O'odham Nation's Constitution.  The sections of that Constitution cited by the plaintiff give the Tohono O'odham Counsel the authority "to provide for the maintenance of law and order and the administration of justice."  If they also have a duty to do so and have failed to comply with that duty, then Morales-Alfonso might be able to bring an action against Counsel

members.  The defendants, however, are not Counsel members.  Accordingly, this section of the complaint fails to state a claim upon which relief can be granted.

Morales-Alfonso further claims there has been a "negligent breach of the duty of care owed to Plaintiff by Mr. Julian Garcia (due to his public position as an authority) as prescribed by the Constitutions of both, the United States and the Tohono O'odham Nation." (Doc. 54, p. 4)  The plaintiff fails to explain, however, how these two documents operate to establish this duty of care.  The United States Constitution puts limits on the activities of federal government.  State action is cabined through the operation of the Fourteenth Amendment due process clause.  Garcia, however, is neither a federal officer nor a state officer.  Accordingly, it is not clear how this document gives him a duty of care toward the plaintiff.  *See also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56, 98 S. Ct. 1670, 1676 (1978)  (The provisions of the Bill of Rights and the Fourteenth Amendment do not infringe on "the powers of local self-government enjoyed by the tribes.")  (punctuation modified).

Morales-Alfonso also does not explain how the Tohono O'odham Nation Constitution gives Julian Garcia a duty of care.  As the court noted above, the Nation's Constitution gives the Tribal Counsel the authority generally "to provide for the maintenance of law and order and the administration of justice."  (Doc. 55-1, p. 26)  It does not appear to give the Counsel an affirmative duty to do so.  Assuming it did, there does not appear to be any requirement that the Counsel act to preserve individual civil rights such as the ones at issue here.  And Julian Garcia is not on the Counsel.  It does not appear that the Tohono O'odham Nation Constitution gives the defendant, Julian Garcia, any particular duty toward the plaintiff.  *See also Cangress v. City of Los Angeles*, 2014 WL 12564099, at *8 (C.D. Cal. 2014)  ("[M]andatory duties generally require a statute or constitutional provision to explicitly impose a duty on public officials.").

It may be that the plaintiff believes the Tohono O'odham Constitution gives the Nation as a whole a duty to maintain law and order, and he can bring an action against the Nation by suing Garcia in his official capacity as a tribal officer.  *See also Dickey ex rel. Dickey v. City of Flagstaff*, 205 Ariz. 1, 3, 66 P.3d 44, 46 (2003)  ("[Plaintiff] has failed to establish that a right

of action for simple negligence, against a municipality engaged in a governmental function, existed at common law.").

Assuming that to be the case, the defendants argue that claims made against the defendants in their official capacity, such as this one, must be dismissed due to sovereign immunity. They are correct. "Tribal sovereign immunity extends to tribal officials when acting in their official capacity and within the range of their authority." *Cook v. AVI Casino Enterprises, Inc*., 548 F.3d 718, 727 (9th Cir. 2008). In this claim, Morales-Alfonso argues that Julian Garcia was negligent while acting pursuant to his "public position as an authority" for the Tribe. This claim is directed to the defendant's actions taken in his official capacity. It must be dismissed due to sovereign immunity.

Finally, the court addresses those claims brought against the Police Chief Vincent Garcia. As the defendants note, the complaint does not allege that Vincent Garcia was present when the plaintiff was evicted from the swap meet. The only factual allegations against him that are not based on speculation are that he sat down near the plaintiff "three or four times" and "paid real attention to Plaintiff" when the plaintiff visited the police department with his wife to obtain a copy of the police report describing the eviction on June 22, 2014. (Doc. 54, p. 7) Assuming these allegations are true, they are insufficient to support a civil rights claim against Vincent Garcia.

Morales-Alfonso further alleges that this defendant was deliberately negligent "for not correcting known deficiencies in procedures within his department and ignoring [sic] to implement new and/or better methods to deal with (in order to eradicate) the apparent dysfunction and ineptness in the department, despite of [sic] having the knowledge of such situation and the power and authority to correct it." (Doc. 54, pp. 3-4) He presents no facts, however, in support of this claim. Speculation is not enough.

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

GRANTING IN PART the defendants' motion to dismiss pursuant to Fed.R.Civ.P 12(b)(1) and 12(b)(6), filed on March 28, 2017. (Doc. 55)

The claims in the plaintiff's fifth amended complaint should be dismissed except for the claims brought against Julian Garcia in his individual capacity pursuant to 42 U.S.C. §§ 1981, 1982, 1985, and 1986 for civil rights violations.

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response without the permission of the District Court.

DATED this 4th day of May, 2017.

_Leslie A. Bowman_

Leslie A. Bowman
United States Magistrate Judge